**EXHIBIT 7**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| MEI KUM CHU, SAU KING CHUNG, and QUN XIANG LING, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>- against -<br><br>CHINESE-AMERICAN PLANNING COUNCIL HOME ATTENDANT PROGRAM, INC.,<br><br>*Defendant.* | Index No: 651947/2016<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT** |

Plaintiffs Mei Kum Chu, Sau King Chung, and Qun Xiang Ling, by their undersigned attorneys, for their class action complaint against Defendant, allege upon information and belief, except as to the allegations that pertain to Plaintiffs that are alleged upon personal knowledge, as follows:

## NATURE OF THE ACTION

1.       Defendant Chinese-American Planning Council Home Attendant Program, Inc. ("CPC Home Attendant Program") is a not-for-profit organization based in New York City. CPC Home Attendant Program describes itself as giving "friendly home care services to seniors in the five boroughs, as well as to those who are medically disabled and/or physically handicapped."

2.       Yet for years, CPC Home Attendant Program engaged in abusive wage practices, paying Plaintiffs for only half of the total number of hours worked and resulting in wages that were far below the statutory minimum wage.

3.       Moreover, CPC Home Attendant Program forced Plaintiffs to work grueling schedules that included multiple, consecutive 24-hour shifts and excessive overtime hours.

4.      Despite the efforts made by Plaintiffs to support Defendant's business and to provide attentive care to their charges, Defendant failed to pay Plaintiffs any overtime wages.

5.      Plaintiffs now bring this class action, individually and on behalf of a class of similarly situated employees, ("the Class" as defined below in Paragraph 16) under the New York Labor Law ("NYLL") and its implementing regulations, as well as common law principles of contract and unjust enrichment, for Defendant's failure to pay Plaintiffs and the Class they seek to represent (1) the state mandated minimum wage rate for all work performed; (2) overtime at not less than one and one-half (1 and 1/2) times the basic minimum hourly rate for all hours worked in excess of forty (40) hours in a workweek;  (3) "spread of hours" premium as required by the NYLL and applicable regulations; (4) all wages to which they were entitled; and (5) the minimum wage as required by the NY Home Care Worker Wage Parity Act  and the Fair Wages for New Yorkers Act during applicable periods.  Defendant also failed to provide Plaintiffs with lawfully required pay statements.

6.      On behalf of the Class, Plaintiffs seek unpaid wages, actual, incidental, consequential and compensatory damages, pre-judgment and post-judgment interest, and attorneys' fees and costs.

## JURISDICTION AND VENUE

7.      CPC Home Attendant Program is subject to personal jurisdiction because it is incorporated and formed in the State of New York and because it has its principal place of business in the State of New York.

8.      Venue is proper in New York County pursuant to CPLR § 503(c) because Defendant is a domestic corporation with its principal office located in this County.

2

9.      Plaintiffs bring causes of action based solely on and arising under the NYLL and common law principles of contract and unjust enrichment.  The claims of Plaintiffs and the Class Members are claims for violations of New York law.  These claims arise from Defendant's systemic wage abuse against its home care aides in New York.

## PARTIES

10.     Plaintiffs Mei Kum Chu, Sau King Chung, and Qun Xiang Liang are adult individuals who at all times relevant to this Complaint have been residents of the City of New York and were employed by Defendant to work in and around the City of New York to provide personal care and assistance to Defendant's disabled and elderly clients.

11.     Plaintiffs were "home care aides" within the meaning of the New York Home Care Worker Wage Parity Act.

12.     Plaintiffs were "covered employees" within the meaning of New York City's Fair Wages for New Yorkers Act.

13.     At all times relevant to this action, Defendant CPC Home Attendant Program was and is a not-for-profit domestic corporation formed in accordance with the laws of the State of New York and conducting business in the State of New York.  CPC Home Attendant Program maintains regular places of business at 1 York Street, New York, New York and 40 Worth Street, New York, New York.  CPC Home Attendant Program is licensed with the New York State Department of Health.

14.     Defendant CPC Home Attendant Program is a "nonprofitmaking institution" within the meaning of 12 NYCRR § 142-3.13.

15.     At all times relevant to this action, Plaintiffs and the Class Members were "employees" covered by the NYLL and Defendant was an "employer" of Plaintiffs and the Class

3

of the home care aides they seek to represent, as those terms are defined by NYLL §§ 2(7),

190(3), 651(5) and 651(6) and applicable regulations, including 12 NYCRR § 142-3.12.

## CLASS ACTION ALLEGATIONS

16.     Plaintiffs bring this case pursuant to CPLR Article 9 on behalf of a class (the

"Class," "Class Members") defined as:

> All home care aides, meaning home health aides, personal care
> aids, home attendants or other licensed or unlicensed persons
> whose primary responsibilities include the provision of in-home
> assistance with activities of daily living, instrumental activities of
> daily living or health-related tasks, employed by Defendant in
> New York to provide care services to Defendant's elderly and
> disabled clients in the clients' homes during the period beginning
> from April 1, 2008 until November 30, 2015, and that such Class
> Members must have ceased their employment with Defendant
> before December 1, 2015 (the "Class Period"), which is the date
> the Memorandum of Agreement ("MOA") between 1199 SEIU
> United Healthcare Workers East (the "Union") and Defendant
> came into effect.  For the sake of clarity, the Class does not
> include any employees who worked for Defendant at any point
> on or after the MOA came into effect.  Any employee who
> worked for Defendant on or after the MOA came into effect is
> not included in the Class.

17.     The Class is so numerous that joinder of all members is impracticable.  Although

the precise number of such persons is unknown, and the facts are presently within the sole

knowledge of Defendant, there are at least hundreds of home care aides employed by Defendant

who would be members of the Class as of the date this Complaint was filed.

18.     There are questions of law or fact common to the Class that predominate over any

questions affecting individual members.  Those questions include but are not limited to the

following:

a.      Whether Plaintiffs and the Class Members were "employees" as that term

is defined in accordance with the NYLL and accompanying regulations;

4

b.      Whether Defendant CPC Home Attendant Program was an "employer" of Plaintiffs and the Class Members as that term is defined by the NYLL and applicable regulations;

c.      Whether Defendant's policy and practice of paying Plaintiffs and the Class Members for only 12 hours of work when Class Members worked a 24-hour shift that required them to remain in the clients' home and either work or be "on call" throughout the 24-hour shift violated the requirements of NYLL minimum wage and overtime provisions;

d.      Whether Defendant's policy and practice of crediting Plaintiffs and the Class Members who worked 24-hour shifts with only 12 hours of work toward overtime violated NYLL minimum wage and overtime provisions;

e.      Whether all time worked by Plaintiffs and the Class Members during 24-hour shifts was compensable work time for purposes of NYLL minimum wage and overtime provisions;

f.      If all time during Plaintiffs' and the Class Members' 24-hour shifts was not compensable, what standard should be used to determine the portion of the shift that was compensable under NYLL minimum wage and overtime provisions;

g.      Whether Defendant's policy and practice of not paying overtime to Plaintiffs and the Class Members when they worked in excess of 40 hours per week violated NYLL overtime provisions;

h.      Whether Defendant's policy and practice of not paying Plaintiffs and the Class Members for all hours during which they were required to attend training meetings violated NYLL minimum wage and overtime provisions;

5

i. Whether Defendant's policy and practice of not paying Plaintiffs and the Class Members for an extra hour of work for shifts exceeding10 hours or more violated NYLL spread of hours requirements;

j. Whether the New York State Department of Labor's investigation of Defendant CPC Home Attendant Program tolled Plaintiffs' statute of limitations from approximately December 10, 2012 to approximately October 30, 2014 pursuant to Section 198(3) of the NYLL;

k. Whether Defendant CPC Home Attendant Program is a certified home health agency, long term home health care program and/or managed care plan as defined by the NY Home Care Worker Wage Parity Act, N.Y. Public Health Law § 3614-c;

l. Whether Plaintiffs and the Class Members were "home care aides" as that term is defined in the NY Home Care Worker Wage Parity Act, N.Y. Public Health Law § 3614-c;

m. Whether Plaintiffs and the Class Members worked on "episodes of care" as direct employees of Defendant as that term is defined by the NY Home Care Worker Wage Parity Act, N.Y. Public Health Law § 3614-c;

n. Whether Plaintiffs and the Class Members are third party beneficiaries of the contracts between Defendant and either the City of New York, various managed care organizations and/or other managed long term care programs requiring Defendant to comply with the provisions of NY Home Care Worker Wage Parity Act, NY Public Health Law § 3614-c;

6

o.      Whether from March 31, 2011 onwards, Defendant paid Plaintiffs and the Class Members the "minimum rate of home care aide total compensation" as that term is defined by the NY Home Care Worker Wage Parity Act, N.Y. Public Health Law § 3614-c;

p.      Whether Defendant was unjustly enriched at the expense of Plaintiffs and the Class Members by its failure to comply with its contractual obligations to either the City of New York, various managed care organizations and/or other managed long term care programs to comply with the NY Home Care Worker Wage Parity Act;

q.      Whether Plaintiffs and the Class Members were "covered employees" under the New York City's Fair Wages for New Yorkers Act, Administrative Code for the City of New York § 6-109 and entitled to living wages and supplemental benefits under the Act;

r.      Whether Defendant kept true and accurate time records for all hours worked by Plaintiffs and the Class Members, as required by, *inter alia*, NYLL §§ 195 and 661, and 12 NYCRR § 142-3.6;

s.      Whether, after April 9, 2011, Defendant violated the Wage Theft Prevention Act, NYLL § 195, by failing to give Plaintiffs and the Class Members pay statements containing information on the dates of work covered by that payment of wages; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked.

19.     Plaintiffs' claims are typical of the claims of the Class because they are all former, hourly-paid, non-exempt, and non-residential home care aides of Defendant who sustained damages, including underpayment of wages, as a result of Defendant's class-wide compensation policies and practices challenged herein. The defenses that are likely to be

7

asserted by Defendant against Plaintiffs are typical of the defenses that Defendant will assert against the Class Members.

20.     No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action. The Class is readily identifiable from records that Defendant is legally required to maintain.

21.     Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel experienced in pursuing complex and class action litigation who will adequately and vigorously represent the interests of the Class.

22.     Class action treatment is superior to other available methods for the fair and efficient adjudication of the controversy alleged herein. Treating this as a class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would entail. Although the relative damages suffered by individual Class Members are not *de minimus*, such damages are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments regarding Defendant's policies and/or practices and establish incompatible standards of conduct for Defendant.

## STATEMENT OF FACTS

23.     On information and belief, during the Class Period, Defendant employed approximately 5,000 home care aides ("Class Members"), including Plaintiffs, to provide home care services to Defendant's disabled and elderly clients living in and around New York City.

8

These home care aides provided services to homebound clients based on the schedule set and dictated by Defendant.

24.     Plaintiff Mei Kum Chu was employed by Defendant as a home care aide from approximately January 25, 2003 to approximately October 14, 2013.

25.     Plaintiff Sau King Chung was employed by Defendant as a home care aide from August 2003 to approximately January 18, 2013.

26.     Plaintiff Qun Xiang Ling was employed by Defendant as a home care aide from November 2006 to approximately June 1, 2015.

27.     The job duties of Defendant's home care aides, including Plaintiffs, included, but were not limited to, the following: personal care services, such as assistance with walking, bathing, dressing, personal grooming, meal preparation, feeding and toileting; heavy and light cleaning, such as sweeping, vacuuming, mopping, dusting, cleaning kitchens, cleaning bathrooms, doing laundry, and taking out garbage; shopping; performing errands; and escorting clients.

28.     Plaintiffs did not reside in the homes of the clients they cared for.  Instead, Plaintiffs maintained homes where they and their families resided separate and apart from the homes of the clients where they worked.  Plaintiffs and the Class Members were not "residential employees" as defined by 12 NYCRR §§ 142-3.1(b).

29.     Throughout the Class Period, Defendant had a policy and practice of paying Plaintiffs and other Class Members one hourly rate of pay during weekdays and a slightly higher hourly rate during weekends.

30.     Defendant regularly assigned Plaintiffs and other Class Members to work 24-hour shifts.  Defendant required Plaintiffs and Class Members assigned to these shifts to remain in the

client's home or by the client's side for the entire 24-hour period to provide services, to monitor the client's location, and to be "on call" to immediately provide services to the client as needed.

31.     While working and/or "on call" during the night, Plaintiffs and other Class Members did not receive at least five hours of uninterrupted sleep time.  Plaintiffs and other Class Members were often required to provide assistance to their clients throughout the night, including assistance to use the bathroom at frequent intervals.

32.     Plaintiffs and other Class Members did not receive at least three hours of meal and other break time.

33.     All 24 hours of Plaintiffs' and Class Members' 24-hour shift were compensable work hours.

34.     Throughout the relevant time period, Defendant had a policy and practice of paying Plaintiffs and other Class Members their hourly rate for only 12 hours of work during a 24-hour shift, plus a flat, per diem amount set at $16.95.

35.     Throughout the relevant time period, Defendant had a policy and practice of crediting Plaintiffs and other Class Members with only 12 hours of work during a 24-hour shift regardless of the number of hours a worker actually worked or was on call during those shifts.

36.     Throughout the relevant time period, Defendant regularly assigned Plaintiffs and other Class Members to work in excess of 40 hours per week but had a policy and practice of not paying overtime to Plaintiffs and other Class Members when they worked in excess of 40 hours per week.  In addition, Defendant had a policy and practice of not paying Plaintiffs and other Class Members their regular rate for all hours up to 40 in weeks during which Plaintiffs and other Class Members worked overtime hours.

10

INDEX NO. 651947/2016

RECEIVED NYSCEF: 02/15/2021

37.     Throughout the relevant time period, Defendant had a policy and practice of not paying spread of hours pay when Plaintiffs and other Class Members worked a spread of hours in excess of 10 hours in a day.

38.     From the middle of 2008 until approximately March, 2010, Plaintiff Mei Kum Chu generally worked approximately 10 hours per day, five days per week.  From approximately April 1, 2010 until November, 2010, Ms. Chu generally worked alternating weeks of three or four consecutive 24-hour shifts for a total of approximately 72 or 96 hours of work per week. From December, 2010 until approximately November 23, 2012, Ms. Chu generally worked alternating weeks of two or three, consecutive 24-hour shifts for a total of approximately 48 or 72 hours of work per week.  From approximately November 23, 2012 until her employment ended on approximately October 14, 2013, Ms. Chu generally worked two, consecutive 24-hour shifts for a total of approximately 48 hours of work per week.

39.     On or about October 14, 2013, Ms. Chu ceased to be an employee of Defendant's.

40.     While working 24-hour shifts, Ms. Chu was normally only able to receive between approximately two to three hours of uninterrupted sleep each shift.

41.     For weekday shifts, Ms. Chu was paid at an hourly rate of $10 per hour.  For weekend shifts, Ms. Chu was paid at an hourly rate of $11.10 per hour.  In addition, Ms. Chu received a flat per diem payment of $16.95 for each 24-hour shift.

42.     When working 24-hour shifts, Ms. Chu was paid for only 12 hours of each shift. Ms. Chu received no hourly compensation for hours worked over 12 during a 24-hour shift.

43.     Despite working in excess of 40 hours each week, throughout the relevant time period, Ms. Chu never received overtime pay.

11

44.     Nor was Ms. Chu paid the "spread of hours" premium whenever she worked a spread of hours that exceeded ten hours in a day.

45.     From approximately 2006 until approximately September 17, 2010, Plaintiff Sau King Chung generally worked six hours per day, six days per week. From approximately November 19, 2010 until her employment ended on or around January 18, 2013, Ms. Chung generally worked two, consecutive 24-hour shifts for a total of approximately 48 hours of work per week.

46.     On or about January 18, 2013, Ms. Chung ceased to be an employee of Defendant's.

47.     While working 24-hour shifts, Ms. Chung was normally only able to receive between approximately two to three hours of uninterrupted sleep each shift.

48.     Ms. Chung was paid at an hourly rate of $10 per hour. In addition, Ms. Chung received a flat per diem payment of $16.95 for each 24-hour shift.

49.     Ms. Chung never received overtime pay even though she frequently worked more than forty hours per week.

50.     At all times relevant to this Complaint, when working 24-hour shifts, Ms. Chung was paid for only 12 hours of each shift. Ms. Chung received no hourly compensation for hours worked over 12 during a 24-hour shift.

51.     Nor was she paid the "spread of hours" premium for working a spread of hours that exceeded ten hours in a day.

52.     From 2007 until April 2010, Plaintiff Qun Xiang Ling generally worked four consecutive 24-hour shifts each week for a total of approximately 96 hours of work per week. From April 2010 until her employment ended on approximately June 1, 2015, Ms. Ling

12

generally worked alternating weeks of three or four, consecutive 24-hour shifts for a total of approximately 72 or 96 hours of work per week.

53.     On or about June 1, 2015, Ms. Ling cease being an employee of Defendant's.

54.     While working 24-hour shifts, Ms. Ling consistently received less than three hours of uninterrupted sleep each shift.

55.     For weekday shifts, Ms. Ling was paid at an hourly rate of $10 per hour.  For weekend shifts, Ms. Ling was paid at an hourly rate of $11.10 per hour.  In addition, Ms. Ling received a flat per diem payment of $16.95 for each 24-hour shift.

56.     When working 24-hour shifts, Ms. Ling was paid for only 12 hours of each shift. Ms. Ling received no hourly compensation for hours worked over 12 during a 24-hour shift.

57.     Despite working in excess of 40 hours each week, throughout the relevant time period, Ms. Ling never received overtime pay.

58.     Nor was Ms. Ling paid the "spread of hours" premium whenever she worked a spread of hours that exceeded ten hours in a day.

59.     As a result of Defendant's pay policies and practices, throughout the Class Period, when Plaintiffs and Class Members were assigned to work 24-hour shifts, Plaintiffs and Class Members did not receive the statutorily required minimum wage for hours up to 40 in a week nor did they receive their regular rate for all hours up to 40 in weeks in which they worked overtime.

60.     Throughout the Class Period, Plaintiffs and Class Members were not paid the required overtime rate of pay for hours worked in excess of 40 hours in a week, Nor were they paid "spread of hours" premium for working a spread of hours that exceeded ten hours in a day.

61.     Upon information and belief, Defendant failed to give Plaintiffs and the Class Members notice on the pay statements distributed by Defendant of: (1) the dates of work covered

by that payment of wages; (2) rate or rates of pay and basis thereof; (3) whether paid by the hour, shift, day, week, salary, piece, commission or other; (4) the regular hourly rate or rates of pay; (5) the overtime rate or rates of pay; (6) the number of regular hours worked; and (7) the number of overtime hours worked as required by NYLL § 195 and accompanying regulations, including 12 NYCRR § 142-3.8.

62.　　Plaintiffs and the Class were "home care aides" within the meaning of N.Y. Public Health Law § 3614-c, also known as the "NY Home Care Worker Wage Parity Act."

63.　　Plaintiffs and the Class were "covered employees" under Administrative Code for the City of New York § 6-109, also known as the "Fair Wages for New Yorkers Act."

64.　　Under the NY Home Care Worker Wage Parity Act, N.Y. Public Health Law § 3614-c and New York City's Fair Wages for New Yorkers Act home health care services agencies are required, as a condition of their contracts with government agencies, to certify in writing that they are in compliance with the terms of the NY Home Care Worker Wage Parity Act and Fair Wages for New Yorkers Act.

65.　　Upon information and belief, Defendant made the required certifications concerning compliance with the wage provisions of the NY Home Care Worker Wage Parity Act, N.Y. Public Health Law § 3614-c, and New York City's Fair Wages for New Yorkers Act.

66.　　However, Defendant failed to pay Plaintiffs and the Class Members the applicable minimum rate of home care aide total compensation established by the NY Home Care Worker Wage Parity Act, N.Y. Public Health Law § 3614-c, and the living wage as established by the New York City's Fair Wages for New Yorkers Act.

67.　　Defendant's actions as alleged herein were willful and not made in good faith.

14

## CLAIMS FOR RELIEF

### COUNT I
### New York Labor Law
### Unpaid Minimum Wage

68.     Plaintiffs re-allege and incorporate by reference all allegations contained in all preceding paragraphs.

69.     At all times relevant to this action, Plaintiffs and the Class Members were Defendant's employees within the meaning of NYLL §§ 2(7), 190(2) and 651(5) and 12 NYCRR § 142-3.12.

70.     At all times relevant to this action, Defendant was the employer of Plaintiffs and the Class Members within the meaning of NYLL §§ 190(3) and 651(6).

71.     At all times relevant to this action, whenever Plaintiffs and Class Members were assigned to work 24-hour shifts, Defendant failed to pay Plaintiffs and the Class Members the statutorily required minimum wage in violation of NYLL § 652 and 12 NYCRR § 142-3.1.

72.     Defendant willfully violated the rights of Plaintiffs and the Class Members by failing to pay them the wages due and owing for work performed in violation of the New York State Labor Law.

73.     Due to Defendant's violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendant their unpaid minimum wages, reasonable attorneys' fees and costs associated with this action and pre-judgment and post-judgment interest.

### COUNT II
### New York Labor Law
### Unpaid Overtime

74.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

15

75.     At all times relevant to this action, Defendant failed to pay Plaintiffs and the Class

Members the statutorily mandated overtime rate for all hours worked in excess of 40 per week in

violation of NYLL, Article 19, § 650, *et seq.*, and 12 NYCRR § 142-3.2

76.     At all times relevant to this action, whenever Plaintiffs and Class Members were

assigned to work 24-hour shifts, Defendant failed to pay Plaintiffs and Class Members their

regular rate for all hours up to 40 in weeks in which they worked overtime.

77.     Defendant willfully violated the rights of Plaintiffs and the Class Members by

failing to pay them the overtime premiums and regular rate due and owing for work performed in

overtime weeks in violation of the New York State Labor Law.

78.     Due to Defendant's violations of the NYLL, Plaintiffs and the Class Members are

entitled to recover from Defendant their unpaid overtime premium wages, regular wages

reasonable attorneys' fees and costs associated with this action and pre-judgment and post-

judgment interest.

### COUNT III
### New York Labor Law
### Unpaid Spread of Hours Pay

79.     Plaintiffs re-allege and incorporate by reference each and every allegation set

forth in the preceding paragraphs.

80.     During the Class Period, Defendant failed to pay Plaintiffs and the Class

Members an additional hour's pay at the basic minimum hourly wage rate for every day that

Plaintiffs and the Class Members worked a spread of hours that exceeded 10 hours (or a shift in

excess of 10 hours) in violation of NYLL §§ 190, *et seq.*, and 650, *et seq.*, and 12 NYCRR §

142-3.4.

81.     Defendant willfully violated the rights of Plaintiffs and the Class Members by failing to pay them the wages due and owing for work performed in violation of the New York State Labor Law.

82.     Due to Defendant's violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendant their unpaid overtime spread of hours pay, reasonable attorneys' fees and costs associated with this action and pre-judgment and post-judgment interest.

### COUNT IV
### New York Labor Law
### Failure to Pay Wages Due

83.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

84.     During the Class Period, whenever Plaintiffs and Class Members were assigned to work 24-hour shifts, Defendant failed to pay Plaintiffs and the Class Members all wages to which he or she was entitled in violation of NYLL § 191.

85.     Defendant willfully violated the rights of Plaintiffs and the Class Members by failing to pay them the wages due and owing for work performed in violation of the New York State Labor Law.

86.     Due to Defendant's violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendant their unpaid wages, reasonable attorneys' fees and costs associated with this action, and pre-judgment and post-judgment interest.

17

## COUNT V
### New York Labor Law §§ 195; 12 NYCRR § 142-3.8
### Failure to Comply with Notification Requirements

87.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

88.     Throughout the Class Period, Defendant willfully failed to provide the requisite paystubs as set forth by NYLL § 195 and 12 NYCRR § 142-3.8.  Defendant's failure to comply with this provisions of the NYLL and accompanying regulations prejudiced the ability of Plaintiffs and the Class Members to ascertain and assert their legal rights and entitle Plaintiffs and the Class Members to $100 per week, up to the statutory limit, for the duration of Defendant's violations of § 195(3), as well as reasonable attorneys' fees, costs of this action, and pre-judgment and post-judgment interest.

## COUNT VI
### Breach of Contract

89.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

90.     Upon information and belief, from March 31, 2011 onwards, Defendant was required to certify and did certify that it paid Plaintiffs and the Class Members wages as required by the NY Home Care Worker Wage Parity Act, N.Y. Public Law § 3614-c.

91.     Upon information and belief, from 2003 onwards, Defendant was required to certify and did certify that it paid its wages and supplemental benefits as required by New York City's Fair Wages for Workers Act and as set by the Comptroller of the City of New York and incorporated by reference in the contracts with governmental instrumentalities.

18

92.     Upon information and belief, Defendant entered into contracts with government agencies to pay Plaintiffs and the Class Members wages as required by the NY Home Care Worker Wage Parity Act, N.Y. Public Health Law § 3614-c, and New York City's Fair Wages for Workers Act.

93.     The agreements to pay Plaintiffs and Class Members as required by the NY Home Care Worker Wage Parity Act, N.Y. Public Health Law § 3614-c, and New York City's Fair Wages for Workers Act were made for the benefit of Plaintiffs and the Class Members.

94.     Whenever Plaintiffs and Class Members were assigned to work 24-hour shifts, Defendant breached its obligation to pay Plaintiffs and the Class Members all wages they were due as required by the NY Home Care Worker Wage Parity Act, N.Y. Public Health Law § 3614-c, and New York City's Fair Wages for Workers Act by failing to pay Plaintiffs and the Class Members for each hour worked, and as a result Plaintiffs and the Class Members were injured.

95.     Plaintiffs and the Class Members, as third party beneficiaries of Defendant's contracts with government agencies to pay wages as required by the NY Home Care Worker Wage Parity Act, N.Y. Public Health Law § 3614-c, and New York City's Fair Wages for Workers Act, are entitled to relief for the breach of this contractual obligation plus interest.

## COUNT VII
**Unjust Enrichment - Defendant's Failure to Pay All Wages Due Under the NY Home Care Worker Wage Parity Act and New York City's Fair Wages For Workers Act**

96.     Defendant, by its policies and actions, was unjustly enriched at the expense of Plaintiffs and the Class Members by failing to pay Plaintiffs and the Class Members all minimum wages due under the NY Home Care Worker Wage Parity Act, N.Y. Public Health

Law § 3614-c, and New York City's Fair Wages for Workers Act whenever Plaintiffs and Class Members were assigned to work 24-hour shifts.

97.     Defendant accepted and received the benefits of the work performed by Plaintiffs and the Class Members at the expense of Plaintiffs and the Class Members.  It is inequitable and unjust for Defendant to reap the benefits of Plaintiffs' and the Class Members' labor without paying all wages due, which includes but is not limited to underpaying Plaintiffs and Class Members for the regular and overtime hours spent caring for the Defendant's clients.

98.     Plaintiffs and the Class Members are entitled to relief for this unjust enrichment in an amount equal to the benefit unjustly retained by Defendant, plus interest on these amounts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for the following relief:

a)   That this action be permitted to proceed as a class action under CPLR Article 9 for all claims alleged, that Plaintiffs be designated as the representatives of the class, and that the undersigned counsel be designated as counsel for the Class;

b)   Judgment be entered against Defendant and in favor of Plaintiffs and each Class Member in the amount of their individual unpaid wages, actual and compensatory damages, and pre-judgment and post-judgment interest as allowed by law;

c)   Plaintiffs be awarded their reasonable attorneys' fees and costs incurred in this litigation;

d)   Defendant be enjoined to cease the practices found illegal or in violation of Plaintiffs' rights, and;

20

e) Such further relief as this Court deems just and proper.

Dated: February 15, 2021
New York, NY

FISHER TAUBENFELD LLP

By:   /s/ Michael Taubenfeld
      Michael Taubenfeld, Esq.
      225 Broadway, Suite 1700
      New York, NY 10007
      Telephone: (212) 571-0700
      Facsimile: (212) 505-2001

      TAKEROOT JUSTICE
      S. Tito Sinha, Esq.
      123 William Street, 16th Floor
      New York, NY  10038
      Telephone: (646) 459-3032
      Facsimile: (212) 619-0653

      *Attorneys for Plaintiffs*

21