**EXHIBIT C**

# MEMORANDUM OF AGREEMENT

WHEREAS, Chinese-American Planning Council Home Attendant Program, Inc. (the "Employer") and 1199SEIU United Healthcare Workers East (the "Union") are party to a collective bargaining agreement, dated _____, as amended by a Memorandum of Agreement, dated _____, 2014 (the "MOA" collectively, the "CBA"); and

WHEREAS, it is the intent of the parties to further modify and extend the CBA, in accordance with the terms of this Memorandum of Agreement ("this Agreement");

**NOW THEREFORE, IT IS HEREBY AGREED AS FOLLOWS:**

**Except as otherwise expressly modified or amended in this Agreement, effective December 1, 2015, the CBA will remain in full force and effect through March 31, 2017.**

**CBA Article X, "Wages" is hereby modified and restated to read in full as follows:**

1. Employees shall be paid no less than $10.00 per work hour, except as otherwise stated in this Agreement (the "Base Rate").

2. Employees are eligible to receive Social Security benefits and New York State Unemployment Compensation, Workers' Compensation and Disability Insurance benefits.

3. Employees assigned to work on a weekend day shall be paid a differential of one dollar and ten cents ($1.10) per work hour for such work on a weekend day up to a maximum of thirteen (13) work hours per day. The term "weekend" means Saturday 8 A.M. to Monday 8 A.M.

4. Employees assigned to a client designated as a "Sleep-in" case will be paid no less than $10.00 per hour for all hours worked, excluding eight (8) hours of unpaid sleep time and three (3) hours of unpaid duty-free meal time or break periods. A "Sleep-in" case is a twenty-four (24) hour shift assignment with a Client. An Employee working a Sleep-in case shall immediately report to his/her Case Coordinator/Personnel Specialist at the completion of the Sleep-in case if the Employee was (i) unable to receive five (5) hours uninterrupted sleep-time; (ii) interrupted by a call to duty at any time during his/her total eight (8) hours sleep-time; (iii) unable to receive three (3) hours duty-free time for meal times or break periods; or (iv) interrupted by a call to duty at any time during his/her three (3) hours of meal times or break periods.

5. Employees working for two or more authorized clients in the same residence at the same time ("mutual cases") shall receive a differential of fifty cents ($0.50) per hour of work.

6. All Employees are eligible for temporary pay increases, with the Union's consent, which shall not be unreasonably withheld, for difficult or special shift assignments when the Employer believes such temporary pay increase is appropriate. The increase may be for the duration of that Employee's assignment to the Client or such other duration as the Employer believes appropriate.

7. All wages shall be paid not less frequently than bi-weekly in cash or by check at the sole option of the Employer, unless the Employee has elected to be paid by direct deposit. Employees hired after April 1, 2012 shall be paid by direct deposit.

8. Employees who are denied entry to a Client's home will be entitled to be paid for their scheduled shift or four hours at the minimum wage, whichever is less.

9. In the event the State or Federal minimum wage increases above $10.00 per hour, the minimum rate of home care compensation under the New York State Home Care Worker Wage Parity Law ("Wage Parity Law") increases, or additional State or Federal monies are otherwise made available for wage increases, the parties shall meet and discuss the application of such increases or additional monies.

10. Effective October 13, 2015, an Employee who works for the Employer more than forty (40) hours in a workweek will be paid overtime pay at the rate of 1 and ½ times the Employee's regular rate ("Overtime Pay") for hours worked in excess of forty (40) during such week ("Overtime Hours"). An Employee entitled to Overtime Pay for a particular hour will not be eligible to receive differential pay (including but not limited to weekend differential or mutual case differential) for that same hour. For example, for an Episode of Care Overtime Hour on a weekend, the Employee would be paid $15.00 (not $1.10 differential in addition to $15.00 per hour).

**CBA Article XI, "Hours" is hereby modified and restated to read in full, as follows:**

1. Due to the manner in which cases are referred to the Employer by its Contracting Entities, there can be no guaranteed work day, week or year, or hours of work.

2. Except in emergencies, no Employee may be required to work more than six (6) consecutive days in a payroll week.

3. Consistent with applicable law, the Employer may designate certain hours on Sleep-in cases as sleep-time and other hours as duty free time. Employees who are assigned to work Sleep-in cases will be allowed eight (8) hours of unpaid sleep time and three (3) hours of unpaid duty-free meal time or break periods. Employees assigned Sleep-in cases will sign an individual agreement with the Employer acknowledging Sleep-in rules and procedures.

4. If an Employee chooses to obtain certification as a home health aide or any other classification, time in training does not constitute hours worked.

5. If an Employee works two or more cases in a single day, travel time between case assignments constitutes hours worked. Travel time between case assignments will be paid at the higher of the Federal or New York State minimum wage per hour.

6. All Employees are required to be at their assigned Client's home and ready to perform services to the Client promptly at the Employee's scheduled start time, and to remain at that

location until the scheduled end time (unless Employee receives prior authorization from Employer). No Employee may leave an assignment before the scheduled end time without obtaining the Employer's prior approval, except in situations where the life, health, or safety of the Employee is endangered, in which case the Employee may leave the assignment, but must contact the Employer as soon as possible to obtain directions as to how to proceed.

7. All Employees are required to contact their Case Coordinator/Personnel Specialist by telephone at least four (4) hours prior to the commencement of an assignment if the Employee cannot cover that assignment. In the event of an emergency beyond the Employee's control, which prevents the Employee from contacting their Case Coordinator/Personnel Specialist, the Employee must provide their Case Coordinator/Personnel Specialist as much notice as possible.

8. An Employee who resigns from the Employer shall give two (2) weeks advance notice in writing of his/her resignation to the Employer.

**CBA Article XIII, "Benefit Fund," is hereby retitled "Home Care Fund," and modified and restated to read in full as follows:**

1. The Employer shall contribute to the 1199SEIU National Benefit Fund for Home Care Employees, or its successor ("Home Care Fund").

Through December 31, 2015, the Employer shall contribute $2.54 per Episode of Care hour worked to the Home Care Fund. For all purposes under this Agreement, an "Episode of Care" hour worked is defined as an hour worked during which an Employee is providing physical home care services to a client, which hour is reimbursable to the Employer under its MCO, MLTCP, HRA or other Contracting Entity contract(s) and covered by the definition of episode of care in New York Public Health law, Section 3614-c(f).

2. Effective January 1, 2016, the Employer shall contribute $2.42 per Episode of Care hour worked to the Home Care Fund excluding Overtime Hours worked. For purposes of clarity, the January 2016 contribution, due on January 30, 2016, will be calculated by multiplying all November 2015 Episode of Care hours worked by the new required rate of $2.42 per Episode of Care hour worked.

3. The Employer's contribution to the Home Care Fund, or its successor, is due every month, no later than the 30th day of the month (except for February, which shall be due on March 2). Each month's contribution is calculated based on the number of Episode of Care hours worked reported by the Employer to the Fund for the month that was two months prior to the contribution month. By way of example, the Employer's contribution to the Home Care Fund due on November 30 of any year is calculated based on all Episode of Care hours worked reported by the Employer to the Fund for September of that year.

4. Employees must perform at least 100 Episode of Care hours worked per month for two consecutive months in order to be eligible for benefits under the Home Care Fund's

benefit plan. Eligibility will be determined based upon a two-month look back period each month pursuant to the Fund's Summary Plan Description.

5. All Employees will be eligible for Wellness and Member Assistance Program ("MAP") benefits provided by the Home Care Fund regardless of the number of Episode of Care hours worked by the Employee in any month.

6. Employer shall submit its Episode of Care hours worked eligibility file to the Home Care Fund, or its successor, not later than the 5th day of each month. In addition, by the 5th day of the month, the Employer shall submit a report to the Home Care Fund differentiating the regular hours and Overtime Hours worked by individual employees for the prior month through the last full payroll period in the month. If the Employer fails to submit this report by the 5th of the month, but separately identifies the Overtime Hours by the end of the month in which the hours are reported, the Employer will receive a prospective contribution credit for the Overtime Hours. The Overtime Hours will be used only for the purpose of determining Employee eligibility for Home Care Fund benefits.

7. The Employer shall make available to the Home Care Fund, or its successor, any pertinent records of Employees that the Home Care Fund, or its successor, requires for its operations and permit the Home Care Fund, or its successor, to audit the Employer's payroll and/or hours records, as necessary, by an auditor chosen by the Fund.

8. Eligible Employees who enroll for benefits in the Home Care Fund, or its successor, will be obligated to pay a premium ("Employee Premium"), except for Employees who only receive MAP benefits. Through December 31, 2015, the Employee Premium is $10.00 per week; effective with the payroll of January 1, 2016, the Employee Premium is $5.00 per week for Employee single coverage and $15.00 per week for single plus dependents (non-spouse), or such other amounts as required by the Fund.

9. The Employer is obligated to deduct and remit to the Home Care Fund, or its successor, the Employee Premium. If an Employee does not have sufficient wages in a week to equal the Employee Premium for that week, the Employer deduction from the Employee's wages will be taken from the next week in which the Employee receives sufficient wages, along with the deduction for that week. An Employer who does not timely remit Employee Premiums will be considered delinquent by the Home Care Fund and will be subject to the Home Care Fund's or its successor's applicable collections policy.

10. In the event that the Employer fails to make contributions, remit Employee Premiums or provide records or permit audits, the Board of Trustees may terminate health insurance coverage for the Employer's Employees and/or commence legal action or may proceed to arbitration under the Trust Agreement. If a violation of the Trust Agreement is found, the Employer shall pay the costs of the action or arbitration, plus legal fees, interest and liquidated damages.

**CBA Article XIV, "Education Fund," is hereby modified and restated to read in full as follows:**

1. Through December 31, 2015, the Employer shall contribute to the 1199SEIU Home Care Industry Education Fund ("Education Fund") at the rate of $0.04 per Episode of Care hour worked.

2. Effective January 1, 2016, the Employer shall contribute to the Education Fund at the rate of $0.05 per Episode of Care hour worked excluding Overtime Hours worked. For purposes of clarity, the January 2016 contribution, due on January 30, 2016, will be calculated by multiplying all November 2015 Episode of Care hours worked by the new required rate of $0.05.

3. If the Employer fails to submit the Episode of Care hours worked eligibility file report by the 5th of the month, but separately identifies the Overtime Hours by the end of the month in which the hours are reported, the Employer will receive a prospective contribution credit for the Overtime Hours.

4. The Employer's contribution to the Education Fund, or its successor, is due every month, no later than the 30th day of the month (except for February, which shall be due on March 2). Each month's contribution is calculated based on the number of Episode of Care hours worked reported by the Employer to the Education Fund for the month that was two months before the contribution month. By way of example, the Employer's contribution to the Education Fund due on November 30 of any year is calculated based on Episode of Care hours worked reported by the Employer to the Fund for September of that year.

5. The Employer shall make available to the Education Fund, or its successor, any pertinent records of Employees that the Education Fund, or its successor, requires for its operations and permit the Education Fund, or its successor, to audit the Employer's payroll and/or hours records, as necessary, by an auditor chosen by the Fund.

6. In the event that the Employer fails to make contributions or provide records or permit audits, the Board of Trustees may terminate coverage for the Employer's Employees and commence legal action or may proceed to arbitration under the Trust Agreement. If a violation of the Trust Agreement is found, the Employer shall pay the costs of the action or arbitration, plus legal fees, interest, and liquidated damages.

\\NY - 038170/000002 - 4614385 v1

**Article XV, "Holidays," is hereby modified to read in full as follows:**

1. Employees are eligible for the following eight (8) holidays:

    New Year's Day
    Martin Luther King, Jr. Day
    Presidents' Day
    Memorial Day
    Independence Day
    Labor Day
    Thanksgiving Day
    Christmas Day

    Employees who actually work on a day that is one of the eight (8) holidays listed above (the "Listed Holidays") will be paid at the rate of two (2) times the Base Rate under this Agreement for Episode of Care hours worked on the Listed Holidays, inclusive of any overtime premium. Employees who do not work on a Listed Holiday will not receive holiday pay.

3. If a Listed Holiday occurs on a weekend day, as defined in Article X, Section 3, an Employee who actually works during these hours will receive two (2) times the Employee's Base Rate for Episode of Care hours worked, plus the weekend differential (i.e. a per hour total of $21.10).

4. There is no pyramiding of holiday pay with any differential pay under this Agreement.

5. An Employee who actually works a Sleep-in case on a Listed Holiday will be paid at the rate of two (2) times the Employee's Base Rate under this Agreement for up to thirteen (13) hours.

6. If an Employee who is scheduled to work on a holiday wishes to take the day off, such Employee must notify the Employer two (2) weeks in advance, and obtain the approval of the Case Coordinator/Personnel Specialist. In the event of an emergency situation which precludes the Employee from providing the requisite notice, the Employee must provide as much notice as practicable under the circumstances. The day off will be granted only if a suitable replacement can be found. Under no circumstances will an Employee who is scheduled to work be permitted to take a holiday off without prior notification to the Employer.

\* \* \*

**CBA Article XVI, "Paid Time Off," Paragraph 1 is hereby modified to read in full as follows:**

1. Employees who have completed their probationary period with the Employer shall accrue up to fifteen (15) Paid Time Off ("PTO") Days (180 hours) per year. PTO will be

accrued at the rate of 0.0577 hours multiplied by the actual number of work hours (one PTO hour earned for each seventeen (17) hours worked by the Employee) per week to a maximum accrual of 3.45 hours per week. Notwithstanding anything to the contrary in the CBA, an Employee assigned as a Sleep-in case will accrue .7501 PTO hours for each 24 hour shift.

 a. Requests for leave time using PTO must be made by the Employee to the Case Coordinator/Personnel Specialist, in writing, at least two (2) weeks prior to the date of the requested leave, unless the absence is due to sickness or injury, in which case the Employee must call in and report such illness or injury to the Case Coordinator/Personnel Specialist at least two (2) hours prior to the start of the shift, and, if requested, submit a note from their physician to the Case Coordinator/Personnel Specialist in order to receive PTO for the illness or injury. Any request for payment of PTO at the time that PTO is taken must be made to the Case Coordinator/Personnel Specialist, in writing, at least two (2) weeks prior to the date the PTO is to begin.

 b. On less than two (2) weeks' notice, an Employee may request to use one (1) accrued PTO day in any fiscal year for a bona fide emergency.

 c. A maximum of ten (10) PTO days (120 hours) may be carried forward from one fiscal year to another. An Employee may elect a payout at the end of a fiscal year of up to ten (10) accrued and unused PTO days (120 hours).

 d. At the end of their employment, Employees will be entitled to receive payment for accrued and unused PTO, calculated at the Employee's Base Rate in effect at the time the PTO is accrued.

**CBA Article XVII, "Resignation," is deleted and replaced with the new article, "Pension Fund," to read in full as follows:**

1. The Employer shall contribute to the 1199SEIU Home Care Employees Pension Fund ("Pension Fund").

2. Through December 31, 2015, the Employer shall contribute $0.14 per Episode of Care hour worked to the Pension Fund.

3. Effective January 1, 2016, the Employer shall contribute to the Pension Fund at the rate of $0.25 per Episode of Care hour worked excluding Overtime Hours worked. For purposes of clarity, the January 2016 contribution, due on January 30, 2016, will be calculated by multiplying all November 2015 Episode of Care hours worked by the new required rate of $0.25.

4. If the Employer fails to submit the Episode of Care hours worked eligibility file report by the 5th of the month, but separately identifies the Overtime Hours by the end of the month in which the hours are reported, the Employer will receive a prospective contribution credit for the Overtime Hours.

7

5. The Employer's contribution to the Pension Fund, or its successor, is due every month, no later than the 30th day of the month (except for February, which shall be due on March 2). Each month's contribution is calculated based on the number of Episode of Care hours worked reported by the Employer to the Fund for the month that was two months prior to the contribution month. By way of example, the Employer's contribution to the Pension Fund due on November 30 of any year is calculated based on Episode of Care hours worked reported by the Employer to the Fund for September of that year.

6. The Employer shall make available to the Pension Fund any pertinent records of the Employees that the Pension Fund requires for its operations and permit the Pension Fund to audit the Employer's payroll and reimbursed hours records, as necessary, by an auditor chosen by the Pension Fund.

7. In the event that the Employer shall fail to make contributions or provide records or permit audits, the Board of Trustees may commence legal action or may proceed to arbitration under the Trust Agreement. If a violation of the Trust Agreement is found, the Employer shall pay the costs of the action or arbitration, plus legal fees, interest and liquidated damages.

**CBA Article XX, "Bereavement," is hereby modified and restated to read in full as follows:**

1. Employees may, upon request, receive a maximum of three (3) consecutive days off with pay in the event of the death of an immediate family member (father, mother, sister, brother, child, spouse, grandparent, grandchild, and parent-in-law). The Employer may require sufficient verification of the death. It is the Employee's responsibility to timely notify the Employer of the Employee's intent to take bereavement leave. Bereavement leave must be taken in the consecutive calendar days immediately following the date of death or funeral service. Employees will be paid a bereavement day only when it falls on a day of the week when an Employee is scheduled to work. Employees will receive pay for a bereavement day equal to the Employee's Base Rate multiplied by the number of hours the Employee is scheduled to work on the day, to a maximum of thirteen (13) hours per day.

**New Article ___ in the CBA, "HOME CARE WORKER WAGE PARITY LAW", is hereby created, to read in full as follows:**

1. Payment of the economic terms of this Memorandum of Agreement is conditioned upon their compliance with the Home Care Worker Wage Parity Law Public Health Law, Section 3614-c. If a party claims that a term is non-compliant, the parties will immediately meet to discuss appropriate modifications to bring the MOA into compliance with the Wage Parity Law. In the event the parties cannot resolve their dispute, the matter shall be referred to Martin F. Scheinman for resolution through binding arbitration.

2. If the Employer maintains that it has insufficient funds to comply on a temporary basis with the economic terms of this Memorandum of Agreement, the Employer

8

shall immediately communicate with the Union and the parties will meet within 5 days to discuss appropriate delays in payment of certain economic terms of this Memorandum of Agreement (excluding base wages and contributions to the Home Care Fund, or its successor). If the parties are unable to reach agreement within five days of meeting, the matter shall be referred to Martin F. Scheinman for resolution through binding arbitration. The parties recognize that nothing herein shall be construed to relieve the Employer of any of its obligations under the Home Care Worker Wage Parity Law and/or the CBA.

**New Article ___ in the CBA, "ALTERNATIVE DISPUTE RESOLUTION", is hereby created, to read in full as follows:**

1. The parties agree a goal of this Agreement is to ensure compliance with all federal, state, and local wage hour law and wage parity statutes. Accordingly, to ensure the uniform administration and interpretation of this Agreement in connection with federal, state, and local wage-hour and wage parity statutes, all claims brought by either the Union or Employees, asserting violations of or arising under the Fair Labor Standards Act ("FLSA"), New York Home Care Worker Wage Parity Law, or New York Labor Law (collectively, the "Covered Statutes"), in any manner, shall be subject exclusively, to the grievance and arbitration procedures described in this Article. The statute of limitations to file a grievance concerning the Covered Statutes shall be consistent with the applicable statutory statute of limitations. All such claims if not resolved in the grievance procedure, including class grievances filed by the Union, or mediation as described below shall be submitted to final and binding arbitration before Martin F. Scheinman, Esq. The Arbitrator shall apply appropriate law and shall award all statutory remedies and penalties, including attorneys' fees, consistent with the FLSA and New York Labor Law in rendering decisions regarding disputes arising under this Article.

2. Whenever the parties are unable to resolve a grievance alleging a violation of any of the Covered Statutes, before the matter is submitted to arbitration, the dispute shall be submitted to mandatory mediation. The parties hereby designate Martin F. Scheinman, Esq. as Mediator for such disputes. Such mediation shall be requested no more than thirty (30) calendar days following exhaustion of the grievance procedure. Following submission of the dispute to mediation, the parties with the assistance of the Mediator shall establish such procedures as shall expeditiously advance the mediation process, including the scheduling of the exchange of relevant information, submission of position statements, and dates for mediation. In the absence of agreement, the Mediator shall determine such procedures. Once the matter has been submitted to mediation, the Employer shall be obligated to produce relevant documents as requested by the Union and any objections to production shall be ruled on by the Mediator. The fees of the Mediator shall be shared equally by the Union and the Employer.

3. No party may proceed to arbitration prior to completion of the mediation process as determined by the Mediator. In the event the Union seeks arbitration of a

grievance subject to these procedures, the Union shall submit its demand for arbitration to the Employer and the Arbitrator within four (4) months following the Mediator's declaration that mediation has concluded. The Employer shall be obligated to produce relevant documents as requested by the Union and any objections to production shall be ruled on by the Arbitrator. Prior to hearing, if noticed, the Union shall also be entitled to depositions of relevant witnesses. The fees of the arbitrator shall be shared equally by the Union and the Employer. The Employer shall upon notice be entitled to take the deposition of any Employee seeking relief in such arbitration or any other relevant witness.

4. In the event an Employee has requested, in writing, that the Union process a grievance alleging a violation of the Covered Statutes and the Union declines to process a grievance regarding alleged violations of the Covered Statutes, through the grievance/mediation process or to arbitration following the conclusion of mediation, an Employee solely on behalf of herself, may submit her individual claim to mediation, or following the conclusion of mediation, to arbitration. Written notice of the Employee's submission of the dispute to mediation and/or arbitration must be provided to the Employer, the Union, and the Mediator/Arbitrator within thirty (30) calendar days of written notice from the Union, as measured by postmark date, email date, facsimile date, or delivery/attempted delivery date (if such notice is served by overnight delivery service), that it has declined to process the dispute to mediation and/or arbitration. Such claims may be presented by and on behalf of the individual Employee only, with or without counsel. The Mediator/Arbitrator shall have no authority to consider class or collective claims or issue any remedy on a class basis. The fees and expenses of the Mediator/Arbitrator shall be shared equally by the employee and the Employer, unless the arbitrator finds a violation of any of the Covered Statutes, in which case the Employer shall pay the fees and expenses of the Arbitrator.

5. The parties agree not to contest court confirmation of an arbitration award rendered under this Article. Nothing herein shall require the Union or the Employer to indemnify the other party with respect to any finding by an arbitrator and/or court of competent jurisdiction that the Employer has violated any of the Covered Statutes.

6. All payroll and time records exchanged by the parties (i.e. Union, Employer or individual Employee) in mediation shall be deemed admissible in arbitration. All other information exchanged in mediation shall be deemed offered as part of a settlement negotiation and, pursuant to the Federal and New York State Rules of Evidence, shall not be admissible in any subsequent proceeding.

**New Article __ in the CBA, "Ratification"**

1. This MOA is subject to ratification by the Union and its membership and by the Board of Directors of the Employer.

2. This Agreement is also subject to approval by the New York City Human Resources Administration.

| 1199SEIU UNITED HEALTHCARE WORKERS EAST | CHINESE-AMERICAN PLANNING COUNCIL HOME ATTENDANT PROGRAM, INC. |
|---|---|
| By: *Rona Shapiro* | By: *[signature]* |
| Date: 12/7/2015 | Date: Dec 4, 2015 |