

**EXHIBIT G**

────────────────────────────────

1199SEIU UNITED HEALTHCARE WORKERS
EAST,

                                    20-cv-3611 (JGK)

                    Petitioner,

                                    OPINION AND ORDER

        - against -

PSC COMMUNITY SERVICES, ET AL.,

                    Respondents.

────────────────────────────────

**JOHN G. KOELTL, District Judge:**

The Petitioner, 1199SEIU United Healthcare Workers East

("1199SEIU" or the "Union"), seeks to confirm an arbitration

award under Section 301 of the Labor Management Relations Act of

1947 (the "LMRA"), as amended, 29 U.S.C. § 185. The award,

issued on April 17, 2020 (the "Award"), was rendered pursuant to

collective bargaining agreements (the "CBAs") between the Union

and each of the Respondents,[1] a group of home care agencies, and

───────────────────

[1] The Respondents are: PSC Community Services; New Partners, Inc. d/b/a/
Partners in Care; Stella Orton Home Care Agency; Richmond Home Needs;
Sunnyside Home Care Project; Sunnyside Cityside Home Care; Family Home Care
of Brooklyn and Queens; Care at Home; Chinese-American Planning Council Home
Attendant Program; United Jewish Council of the East Side Home Attendant
Service Corporation; The First Chinese Presbyterian Community Affairs Home
Attendant Corporation; Azor Home Care; Bushwick Stuyvesant Heights Home
Attendants, Inc.; CABS Homecare; River-Spring Licensed Homecare Services
Agency, Inc.; St. Nicholas Human Supports Corporation; Wartburg; Alliance for
Health, Inc.; Region Care, Inc.; Special Touch Home Care Services, Inc.; Rain
Inc.; Prestige Home Care, Inc.; Prestige Home Attendant Inc. d/b/a All Season
Home Attendant; Personal Touch Home Care of N.Y., Inc.; Priority Home
Services; Premier Home Health; Bronx Jewish Community Council Home Attendant
Services; CIDNY Independent Living Services; Home Care Services for
Independent Living; New York Foundation for Senior Citizens Home Attendant
Services; Cooperative Home Care Associates; RiseBoro Homecare, Inc.; Fegs
Home Attendant Services; Home Health Management Services Inc.; School
Settlement Home Attendant Corp.; Rockaway Home Attendant; Bronxwood Home for
the Aged, Inc.; AccentCare of NY, Inc.; Isabella Visiting Care, Inc.; Social

it potentially affects more than 100,000 current and former home care employees represented by the Union.  Two groups of parties, former employees of respondents Chinese-American Planning Council Home Attendant Program ("CPC") and United Jewish Council of the East Side Human Attendant Service ("UJC") (together, "Proposed Intervenors") have filed motions to intervene and dismiss or stay the petition. Non-party Gail Yan ("Non-Party Yan") has also filed a motion to dismiss the petition for lack of jurisdiction.[2]

For the reasons that follow, the Proposed Intervenors' motion to intervene is **DENIED,** the motions to dismiss or stay are **DENIED,** and the petition to confirm the arbitration award is **GRANTED.**

## I.   Facts

The following facts are taken from the Petition and declarations filed by the parties and are undisputed unless otherwise noted.

1199SEIU is a labor union, that serves as the sole and exclusive representative for the Respondents' home health aide employees, including for purposes of collective bargaining over

Concern Community Development Corp.; ABC Health Services Registry; and, Alliance Home Services. Pet. ¶ 3. According to the Petition, "due to scrivener's error" in the Award, "Rain, Inc." was erroneously referred to as "Award Ray, Inc.," "Premier Home Health" was erroneously referred to as "Premiere Home Health," "CIDNY Independent Living Services" was erroneously referred to as "Sydney Independent Living Services," and "RiseBoro Homecare, Inc." was erroneously referred to as "Rise Borough Home Care, Inc." Id. ¶ 3 & nn. 1-4.
[2] Non-Party Gail Yan has not filed a motion to intervene.

the terms and conditions of their employment. <u>See</u> Pet. ¶ 6. The

Respondents are licensed home care agencies. <u>Id.</u> ¶ 3. The Union

is a party to a substantially similar CBA with each of the

Respondents. <u>Id.</u> ¶ 7.

It is uncontested that each of the CBAs included a

grievance and arbitration procedure that provides, in relevant

part:

> 1. A grievance is defined as any dispute between the Union
> (on its behalf and/or on behalf of any Employee) with the
> Employer involving the proper application, interpretation,
> or compliance with the specific written provisions of the
> Agreement based on facts and circumstances occurring during
> the term of this Agreement. A grievance is subject to
> arbitration.
> 2. Grievances will be resolved in accordance with the
> following procedure. . . .
>> Step 4 -- If the grievance is not resolved at Step 3,
>> the Union and/or Employer may within ten (10) days
>> thereafter request that the matter be submitted for
>> final and binding arbitration under the Labor
>> Arbitration Rules of the American Arbitration
>> Association.
> 3. Notwithstanding the foregoing, a grievance that affects
> a substantial number of Employees and is outside the
> authority of the Employer's representatives designated in
> Steps 1 and 2 may be presented initially at Step 3 of the
> grievance procedures. This grievance must be presented in
> writing and within ten (10) days of the occurrence which
> gave rise to the grievance. . . .
> 5. The opinion and award of the arbitrator must be made in
> writing and is final and binding upon all parties. The
> arbitrator has full authority to decide the issue or issues
> in dispute, except that s/he does not have authority to
> amend, alter, modify, add to or subtract from the
> provisions of this Agreement.

<u>Id.</u> ¶ 8; Pet. Ex. B, at 28-29.  Under Rule 3(a) of the Labor

Arbitration Rules of the American Arbitration Association (the

"AAA Rules"), "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Pet. Ex. A, at 13.

In or about 2014, the Union signed a Memorandum of Agreement with each of the Respondents, that provided in relevant part:

> [G]iven changes in federal and state law imposing new obligations on the Employer and exposing Employers to significantly increased level of litigation, it is in the interest of the Union, Employees, and the Employer to develop an expeditious and effective alternative dispute resolution procedure for the resolution of claims arising under such laws. Accordingly, between the execution of this Agreement and December 1, 2014, or as otherwise agreed by the parties, the parties shall meet in good faith to negotiate such an alternative dispute resolution procedure. If the parties are unable to agree to such a procedure in the allotted time, the Employer may submit the dispute to Martin F. Scheinman for final and binding arbitration.

Pet. ¶ 9; Pet. Ex. C, at 6-7.

Finally, in or about 2015, the Union signed a further Memorandum of Agreement (the "2015 MOA") with each of the Respondents, that provided for the resolution of claims under the Fair Labor Standards Act, the New York Home Care Worker Wage Parity Law, and New York Labor Laws, pursuant to an alternate dispute resolution process. See Pet. ¶ 10; Pet. Ex. D, t 9. In relevant part, the 2015 MOA provided that a new article be added

to the CBA, entitled "ALTERNATIVE DISPUTE RESOLUTION," which

provided in relevant part:

> The parties agree a goal of this Agreement is to ensure
> compliance with all federal, state and local wage hour
> laws and wage parity statutes. Accordingly, to ensure
> the uniform administration and interpretation of this
> Agreement in connection with federal, state and local
> wage-hour and wage parity statutes, all claims brought
> by either the Union or Employees, asserting violations
> of or arising under the Fair Labor Standards Act
> ("FLSA"), New York Home Care Worker Wage Parity Law, or
> New York Labor Law (collectively, the "Covered
> Statutes"), in any manner, shall be subject exclusively,
> to the grievance and arbitration procedures described in
> this Article. The statute of limitations to file a
> grievance concerning the Covered Statutes shall be
> consistent with the applicable statutory statute of
> limitations. All such claims if not resolved in the
> grievance procedure, including class grievances filed by
> the Union, or mediation as described below shall be
> submitted to final and binding arbitration before Martin
> F. Scheinman, Esq. The Arbitrator shall apply
> appropriate law and shall award all statutory remedies
> and penalties, including attorney['s] fees, consistent
> with the FLSA and New York Labor Law in rendering
> decisions regarding disputes arising under this Article.

Pet. ¶ 10; Pet. Ex. D, at 9. The 2015 MOA also required that

before parties can proceed to resolve a grievance alleging a

violation of a "Covered Statute" through arbitration, it must

first be submitted for "mandatory mediation." Pet. ¶ 11; Pet.

Ex. D, at 9.[3] It also stated that, "[t]he parties agree not to

---

[3] Specifically, the 2015 MOA provides:
> 2. Whenever the parties are unable to resolve a grievance alleging a
> violation of any of the Covered Statutes, before the matter is
> submitted to arbitration, the dispute shall be submitted to mandatory
> mediation. The parties hereby designate Martin F. Scheinman, Esq., as
> Mediator for such disputes. Such mediation shall be requested no more
> than thirty (30) calendar days following exhaustion of the grievance
> procedure. . . .

contest court confirmation of an arbitration award rendered under this Article." Pet. ¶ 11; Pet. Ex. D, at 10.

On January 2, 2019, the Union filed a class action grievance against the Respondents on behalf of its home care "members concerning violations of the CBAs regarding wage and hour claims arising under the Covered Statutes." Pet. ¶ 12. Pursuant to the 2015 MOA and CBA, the Union and Respondents proceeded to mediation before Martin S. Scheinman (the "Arbitrator"), which concluded on December 24, 2019 without an agreement having been reached. Id. ¶¶ 14, 16. At the time the Union filed the grievance, certain home care workers, including certain employees who had terminated employment prior to the adoption of the 2015 MOA, had initiated putative class action lawsuits in state and federal court to pursue claims under the "Covered Statutes" directly against their employers. Id. ¶ 13. In cases involving eight former home care workers, courts held that the plaintiffs could not be compelled to arbitrate under the 2015 MOA. Id. ¶ 13. With the consent of the Arbitrator, certain attorneys representing individual home care employees,

---

3. No party may proceed to arbitration prior to completion of the mediation process as determined by the Mediator. In the event the Union seeks arbitration of a grievance subject to these procedures, the Union shall submit its demand for arbitration to the Employer and the Arbitrator within four (4) months following the Mediator's declaration that mediation has concluded. . . .

Pet. ¶ 11; Pet. Ex. D, at 9-10.

who were then plaintiffs in pending court cases, also participated in the mediation. Id. ¶ 15.

On December 18, 2019, the Arbitrator held a telephone conference in which the Union and certain Respondents participated. See Fourth Blackstone Decl., ECF No. 153, ¶ 4. Arbitrator Scheinman stated that he was inclined to deem the mediation concluded and proceed to arbitration, and "the parties presented their joint position on the importance of the Arbitrator bifurcating the proceeding and finally deciding the gateway issues of arbitrability and jurisdiction." Id. The Arbitrator agreed to establish a briefing schedule and hearing date on those issues. Id. On December 24, 2019, in addition to declaring the mediation complete, Arbitrator Scheinman gave the parties leave to submit briefs addressing two threshold issues:

> 1. Are the claims encompassed by the wage and hour related grievances involving current and former 1199 bargaining unit members, including those arising under federal, state and local law, arbitrable?
> 2. Does the Arbitrator have jurisdiction to adjudicate the claims asserted in the wage and hour grievances arising under federal, state and local law, filed by the parties to the Collective Bargaining Agreement ("Agreement") which encompass all claims arising under the federal, state and local laws named in the Agreement, as well as any pending litigation or administrative actions on the identical claims, irrespective of whether employees' employment terminated prior to the effective date of the Memorandum of Agreement providing Arbitration Dispute Resolution for exclusive mediation/arbitration procedures for wage and hour disputes pursuant to the Agreement between the parties?

Pet. ¶¶ 16-17; Pet. Ex. A, at 7-8.[4] The Arbitrator held a hearing on January 15, 2020, and certain attorneys representing individual home care employees that were plaintiffs in pending court cases and who had participated in the mediation, were given notice of the hearing and appeared. See Pet. ¶¶ 18-19. Following the hearing and submission of briefs, the Arbitrator issued the Award on April 17, 2020. Id. ¶ 20. In relevant part, the Arbitrator determined that the wage and hour related grievances involving current and former Union bargaining unit members, including those under federal, state, and local law, are arbitrable. See Pet. Ex. A, at 47. In addition, the Arbitrator determined he had "jurisdiction" to adjudicate the claims. Id. However, the Arbitrator expressly excluded from the Award eight employees, who were plaintiffs in pending state cases: Alvaro Ramirez Guzman, Elida Augustina Mejia Herrera, Leticia Panama Rivas, Boris Pustilnik, Maral Agarunova, Epifania Hichez, Carmen Carrasco, and Seferina Acostta. Id. at 48.

At both the oral argument held before Arbitrator Scheinman on January 15, 2020, and in this proceeding, none of the Respondents disputed the Arbitrator's conclusions regarding the jurisdiction and arbitrability. See Fourth Blackstone Decl., ECF No. 153 ¶¶ 6-7.

---

[4] Arbitrator Schneiderman also gave parties leave to submit briefs on "What is the role, if any, of counsel for the individual Plaintiffs, collective or putative class in this proceeding?" Pet. Ex. A, at 8.

Three of the original seven Proposed Intervenors—Mei Kum Chu, Sau King Chung, Qun Xiang Ling—are former employees of CPC, and have been involved in state and federal court litigation against CPC. Although the parties contest the scope and significance of these prior actions for this petition to confirm the Award, the parties appear to agree that the CPC-related litigation is pending, after it had previously been stayed. See Kirschner Decl., ECF No. 111, ¶ 9; Kirschner Decl. Ex. K; ECF Nos. 141, 146, 158.[5] The parties agree that Mei Kum Chu, Sau King Chung, and Qun Xiang Ling were no longer members of the union when the 2015 MOA took effect. See Second Blackstone Decl., ECF No. 139, ¶ 4. The remaining Proposed Intervenors—Epifania Hichez, Carmen Carrasco, Seferina Acosta, and Dulce Herrera Palma, and an additional "new" Proposed Intervenor, Maria Diaz—are former employees of UJC. See ECF No. 146, at 1. Hichez, Carrasco, and Acosta are named plaintiffs in pending state court litigation against UJC. Id. at 1-2. The New York State Supreme Court denied UJC's motion to compel arbitration, in a decision that was affirmed by the Appellate Division, finding that the plaintiffs raised claims "outside the CBA" and as former members of the Union, were not bound by the 2015 MOA's exclusive alternative dispute provision. Hichez v. United Jewish Council of the E.

---

[5]  In a letter to the Court, the Proposed Intervenors informed the Court that a New York state court reinstated the case on February 9, 2021, and granted Mei Kum Chu, Sau King Chung, and Qun Xiang Ling leave to file an amended complaint. ECF No. 158.

Side, 117 N.Y.S.3d 214, 215 (App. Div. 2020). Out of respect

for this decision, the Arbitrator concluded that these three

plaintiffs were explicitly carved out of the scope of the Award.

See Pet. Ex. A, at 44 & n.18. According to Union records,

Proposed Intervenors Acosta, Carrasco, and Dulce Herrera Palma

were UJC employees and bargaining unit members through 2016, and

thus were both employees and Union bargaining members when the

2015 MOA took effect.[6] See Second Blackstone Decl., ECF No. 139,

¶ 4. In addition, according to the Union records, Diaz worked

for various Respondents between 2013 and October of 2020, and

was a bargaining unit member at the time the 2015 MOA took

effect, when it was executed, and when the Union filed its

grievance in January 2019. See Third Blackstone Decl., ECF No.

150, ¶ 6.

## II. Motion to Intervene

The Proposed Intervenors-Mei Kum Chu, Sau King Chung, Qun

Xiang Ling, Epifania Hichez, Carmen Carrasco, Seferina Acosta,

and Dulce Herrera Palma-have filed a motion to intervene, and

counsel for the Proposed Intervenors subsequently filed a letter

seeking to intervene on behalf of Maria Diaz, a "new" intervenor

---

[6] The Proposed Intervenors concede that Palma was an employee and union
member when the 2015 MOA took effect, but contest the status of Acosta and
Carrasco. However, they have offered no evidence to rebut the Union's
records. See Sitzer Decl., ECF No. 113, ¶¶ 2-3; ECF No. 127, at 8 (conceding
Palma was still an employee and Union member when the 2015 MOA took effect);
ECF No. 146, at 1 & n. 1.

who was a former employee of UJC.[7] The Proposed Intervenors argue that they should be permitted to intervene because they wish to pursue their claims in state court, and the Arbitrator's Award addresses his jurisdiction to adjudicate their claims. Both the Union and Respondents UJC and CPC have opposed these motions, arguing that the Proposed Intervenors lack standing to challenge the Award and do not satisfy the requirements for intervention under Federal Rule of Civil Procedure 24.

## A. Standing

It is well established that "an individual employee represented by a union [in a labor arbitration] generally does not have standing to challenge an arbitration proceeding to which the union and the employer were the only parties." Katir v. Columbia Univ., 15 F.3d 23, 24-25 (2d Cir. 1994) (per curiam); see, e.g., In re AMR Corp., 598 B.R. 365, 373 (Bankr. S.D.N.Y. 2019); Choudhary v. U.S. Postal Serv., No. 14-cv-4500, 2015 WL 1651076, at *2 (E.D.N.Y. Apr. 14, 2015); Duffy v. Legal Aid Soc'y, No. 12-cv-2152, 2013 WL 541521, at *3 (S.D.N.Y. Feb. 12, 2013); Shait v. The Millennium Broadway Hotel, No. 00-cv-5584, 2001 WL 536996, at *8-9, (S.D.N.Y. May 18, 2001); Johnson v. Am. Arbitration Ass'n, No. 98-cv-6314, 1999 WL 223154, at *2, (S.D.N.Y. Apr. 16, 1999); U.S. Postal Serv. v.

---

[7] To the degree that the Proposed Intervenors argue they are intervening on behalf of a class, they lack standing, because they have not pointed to any class that has been certified.

<u>Am. Postal Workers Union</u>, 564 F. Supp. 545, 550 (S.D.N.Y. 1983).[8] Although employees "may have standing to attack an arbitration award under section 301 of the [LMRA], upon a showing that the union breached its statutory duty of fair representation, or upon a showing of fraud or deceit," or that the union has "failed to act upon the award," <u>U.S. Postal Serv.</u>, 564 F. Supp. at 550-51, the Proposed Intervenors have not made such allegations, nor provided evidence to suggest such conditions are met here. Thus, the Proposed Intervenors lack standing to challenge the Award.

## B. Rule 24

The Proposed Intervenors also have failed to demonstrate that they satisfy the requirements of Rule 24. Rule 24(a)(2) provides for intervention as of right to any party who can "(1) file a timely motion; (2) show an interest in the litigation; (3) show that its interest may be impaired by the disposition of the action; and (4) show that its interest is not adequately protected by the parties to the action." <u>D'Amato v. Deutsche Bank</u>, 236 F.3d 78, 84 (2d Cir. 2001); <u>see</u> <u>also</u> Fed. R. Civ. P. 24(a)(2). Although permissive intervention is left to the discretion of the district court, "court[s] consider[ ] substantially the same factors whether the claim for

---

[8] Unless otherwise noted, this Opinion and Order omits all alterations, omissions, emphasis, internal quotation marks, and citations in quoted text.

intervention is 'of right' under [Rule 24(a)(2)], or 'permissive' under [Rule 24(b)(1)(B)]." <u>R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.</u>, 467 F.3d 238, 240 (2d Cir. 2006). The Court of Appeals has instructed that "a failure to satisfy any one of these four requirements is a sufficient ground to deny the application." <u>Floyd v. City of New York</u>, 770 F.3d 1051, 1057 (2d Cir. 2014) (per curiam). Because each of the Proposed Intervenors have at minimum failed to demonstrate that their interests would be impaired and are not being adequately represented, their motions to intervene are denied.

First, Maria Diaz's submission requesting to intervene was neither made by a "motion" within the meaning of Rule 24, nor was it timely. <u>See</u> Fed. R. Civ. P. 24(a), (c).[9] Although "timely" is not defined by Rule 24, courts consider: "(a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of

---

[9] Counsel for Maria Diaz submitted a Declaration from Maria Diaz and a memorandum of law in support of her intervention, but did not file a motion to intervene and instead sought to relate Maria Diaz's request back to the fully briefed motions to intervene filed by Mei Kum Chu, Sau King Chung, Qun Xiang Ling, Epifania Hichez, Carmen Carrasco, Seferina Acosta, and Dulce Herrera Palma. <u>See</u> ECF Nos. 103, 145, 146. Maria Diaz was not named in the original motions to intervene, and her counsel suggests she should be permitted to intervene because in a Reply Brief for the original motions to intervene, counsel for the Proposed Intervenors' requested to "expeditiously substitute another potential intervenor once he or she is located." ECF No. 127, at 8. However, motions to intervene are filed on behalf of specific parties, not on behalf of counsel.

unusual circumstances militating for or against a finding of timeliness." MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc., 471 F.3d 377, 390 (2d Cir. 2006). The Union filed the petition to confirm the Award on May 8, 2020, following months of the grievance process and years of state court litigation. Diaz's request to intervene on December 7, 2020, after the parties had completed multiple rounds of extensive, voluminous briefing, would prejudice the parties in the current proceedings, and no compelling or unusual circumstances weigh in favor of finding her motion timely.

Apart from Maria Diaz, the Proposed Intervenors' motions are otherwise timely, and because the Union is seeking to pursue claims for alleged violations of individual intervenors' rights under Covered Statutes, the Proposed Intervenors can be said to have an "interest" in the arbitration. However, the only "interest" of the Proposed Intervenors, cognizable under Rule 24 would be their potential entitlement to compensation for potential violations of labor laws or the terms of the CBA. By contrast, the Proposed Intervenors' apparent argument that confirmation of the Award may impair their ability to assert their claims in state court is too contingent or remote to be cognizable under Rule 24. See Floyd, 770 F.3d at 1060 ("[F]or an interest to be 'cognizable' under Rule 24, it must be direct, substantial, and legally protectable [such that an] interest

that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule."); see also Eddystone Rail Co., LLC v. Jamex Transfer Servs., LLC, 289 F. Supp. 3d 582, 593 (S.D.N.Y. 2018); Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 550 B.R. 241, 253 (Bankr. S.D.N.Y. 2016) (noting the "stare decisis effect of an adverse judgment" alone is not sufficiently cognizable under Rule 24(a)). The possibility that the Award might make it more difficult for the Proposed Intervenors to pursue their claims in the manner they may now wish, despite the terms of the CBA or their Union's efforts to pursue their claims on their behalf, is not sufficiently direct, substantial, and legally protectable to be cognizable as an interest under Rule 24.

So understood, the Proposed Intervenors have failed to show that their interest in the resolution of their claims against the Respondents is not being adequately represented, or that their interest would be impaired without their intervention. While the burden to demonstrate inadequacy of representation is generally "minimal," Trbovich v. United Mine Workers of Am., 404 U.S. 528, 538 n.10 (1972), a more rigorous showing of inadequacy has been required in cases "where the putative intervenor and a named party have the same ultimate objective," Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 179 (2d Cir.

2001); see also Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co., 922 F.2d 92, 98 (2d Cir. 1990) ("Where there is an identity of interest between a putative intervenor and a party, adequate representation is assured."); Royal Park Investments SA/NV v. U.S. Bank Nat'l Ass'n, 356 F. Supp. 3d 287, 297 (S.D.N.Y. 2018).

Moreover, the Proposed Intervenors' alleged impairment is speculative. The Proposed Intervenors do not represent that they have attempted to pursue the Union's internal grievance procedures and been rebuffed, or that the Union's representation of their claims is inadequate. Cf. Republic Steel Corp. v. Maddox, 379 U.S. 650, 653 (1965) (a former employee "must afford the union the opportunity to act on his behalf"). The Union has acted with diligence, and the Proposed Intervenors have provided no evidence to suggest that the Union would not adequately represent the Proposed Intervenors' claims against the Respondents. And, to the degree that the Union later fails in its duty, the Proposed Intervenors can bring an action alleging the Union has breached its duty of fair representation. See Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 44-48 (1998).

Finally, there are additional factual differences for certain Proposed Intervenors that further support their lack of standing and emphasize that their intervention would be inappropriate. First, Epifania Hichez, Seferina Acosta and

Carmen Carrasco are expressly excluded from the Award, and thus cannot allege they suffer even the speculative impairment of the Award's potential effect on parallel state court litigation. See Pet. Ex. A, at 44. Further, according to sworn declarations from the Union, Palma, Acosta, and Carrasco were Union members at the time the 2015 MOA was executed and took effect.[10] Further, in addition to being untimely, Maria Diaz's attempt to intervene is similarly improper. Although she did cease to be an employee of UJC, she thereafter worked for two other agencies at which she was represented by 1199SEIU. The Union has presented evidence to establish that Ms. Diaz was a bargaining unit member both at the time the 2015 MOA took effect, and when the grievance was filed in January 2019. See Hocson Decl., ECF No. 149; Third Blackstone Decl., ECF No. 150, ¶ 6.

Thus, even if a distinction were to be drawn between employees who ceased to be Union members before the 2015 MOA was executed or took effect, Palma, Acosta, Carrasco, and Diaz would all be bound by the 2015 MOA's exclusive Alternative Dispute Resolution provision.

---

[10] The Proposed Intervenors have conceded that Palma lacks standing because she was working and a member of the Union after the 2015 MOA took effect. See ECF No. 127, at 8. Although the parties dispute whether Seferina Acosta and Carmen Carrasco were Union members at the time of the 2015 MOA was executed, the Union has provided a sworn declaration, and supporting evidence from its Dues that they were members. The Proposed Intervenors have presented no evidence to support their claim that this is false and have merely stated that "the factual dispute should not affect any of the outstanding motions." ECF No. 146, at 1 & n. 1.

Non-Party Gail Yan never filed a motion to intervene, and,
beyond her stated interest that she "want[s]" certain named
plaintiffs in a parallel suit "to continue representing" her
claims against CPC, Yan Aff., ECF No. 101, Ex. E ¶ 9, she has
not articulated any other interests that would be cognizable
under Rule 24.

Therefore, the motions to intervene are denied.

### III.   Jurisdiction and Preclusion

This is an action to confirm an arbitration award. "Section
301 of the [LMRA] provides federal courts with jurisdiction over
petitions brought to confirm labor arbitration awards." Local
802, Associated Musicians of Greater N.Y. v. Parker Meridien
Hotel, 145 F.3d 85, 88 (2d Cir. 1998); 29 U.S.C. § 185.

Non-Party Yan has filed a "motion to dismiss the petition
pursuant to Rule 12(h)(3)," requesting this Court to find sua
sponte that it lacks subject matter jurisdiction. Together with
Non-Party Yan, the Proposed Intervenors also argue in their
motion to dismiss or stay that the Award is not sufficiently
final and ripe for judicial review and that confirmation of the
Award is barred by issue and claim preclusion. In addition, Non-
Party Yan has argued that this Court lacks jurisdiction under
the Rooker-Feldman doctrine. For the reasons that follow, all
three arguments are without merit.

18

**A.**

The Proposed Intervenors and Non-Party Yan both argue that the Award at issue here is not ripe for review, because it is not a final award. That argument is without merit.

The Petitioner and the Respondents—the parties-and the Arbitrator agreed that two threshold issues relating to the scope of the arbitration warranted bifurcation and should be submitted for final resolution by the Arbitrator, prior to a determination of the merits.  See Fourth Blackstone Decl., ECF No. 153, ¶ 4.  The Proposed Intervenors argue that because the Award did not cover liability or damages, it cannot be final.[11] However, such a restricted approach to finality is not required. While the bifurcation of liability and damages are common examples where courts have confirmed final, although interim arbitration awards, the general test for finality depends on the arbitration agreement and whether the parties intended to "resolve finally the issues submitted" to the arbitrator. Corp. Printing Co. v. NY Typographical Union No. 6, No. 93-cv-6796,

---

[11] The Proposed Intervenors also argue that the Arbitrator's Award was related to "procedural" questions and thus can only be answered by the arbitrator. Such an assertion is unpersuasive.  The parties' clear intention was to submit the questions addressed by the Award as discrete "issues" put to the Arbitrator to answer conclusively. Thus, the Award is the "final disposition" of the matter put to the Arbitrator, rather than one of a series of "'procedural' questions which grow out of the dispute and bear on its final disposition." John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557 (1964). Moreover, questions relating to the subject matter jurisdiction of the Arbitrator—such as whether a party can demand or compel arbitration at all—are generally not considered "procedural" questions. See id. at 557-58; CBS, Inc. v. Snyder, 989 F.2d 89, 91-92 (2d Cir. 1993).

1994 WL 376093, at *4 (S.D.N.Y. July 18, 1994) (Sotomayor, J.).
"[W]here the parties agree to submit to arbitration part of
their dispute, with the intent that the arbitrator's decision be
a final determination on the issue submitted, the arbitrator has
the authority and responsibility to issue a final, albeit
'interim' award." Pfizer Inc. v. ICWUC/UFCW Locals 95C, No. 13-
cv-1998, 2014 WL 1275842, at *4 (S.D.N.Y. Mar. 24, 2014)
(quoting Corp. Printing Co., 1994 WL 376093, at *4). By
contrast, where the parties dispute finality, or where the
arbitrator signals it "may still revisit" the ruling, a decision
may not yet be sufficiently final to be ripe for review. Ward v.
Ernst & Young U.S. LLP, 468 F. Supp. 3d 596, 604 (S.D.N.Y.
2020).

Thus, despite the Proposed Intervenors' allegations to the
contrary, the Award is "final" with respect to the issues put to
the Arbitrator. The parties sought a decision by the Arbitrator
on important issues on the scope of the arbitration, namely
whether the arbitration included wage and hour claims for former
union members, and whether the Arbitrator had jurisdiction to
arbitrate those claims. Given the importance of those questions
to the scope of the arbitration, the parties sought a decision
on those issues at the outset of the Arbitration.

The Proposed Intervenors and Non-Party Yan note that the
Arbitrator deferred decision about whether a class "opt-out"

provision was appropriate, and that amendments were made by consent of the parties to correct errors in the Award. But, a decision regarding whether an opt-out provision should exist is different from the jurisdictional and arbitrability questions decided by the Arbitrator. Similarly, the amendment made by mutual agreement of the parties to add a party that was mistakenly left out of a list of excluded former employees similarly does not undermine the finality of the Award.

The Proposed Intervenors seek to rely on <u>Mason Tenders Dist. Council of Greater New York & Long Island v. CAC of New York, Inc.</u>, in which Judge Ramos concluded that the interim award was not actually "final," because the defendant disagreed regarding the finality of the liability award, and because the arbitrator appeared to leave undecided key aspects of the liability determination. 46 F. Supp. 3d 432, 436 (S.D.N.Y. 2014). By contrast, in this case, the Respondents have not opposed the finality of the Arbitrator's Award, and the Award does not suggest the Arbitrator intends to revisit questions of scope and arbitrability in future proceedings.[12] Similarly, the Proposed Intervenors' reliance on language in <u>Gen. Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co.</u>, stating that an award must be "final and binding under the

---

[12] The plaintiff's reliance on <u>Ward</u> is similarly unpersuasive, because the arbitration panel in that case also clearly stated it may later revise its conclusions. 468 F. Supp. 3d at 604.

collective bargaining agreement" to support subject matter jurisdiction to enforce it under Section 301, is misplaced. <u>See</u> 372 U.S. 517, 518 (1963). <u>Gen Drivers</u> instructs that a court looks to the CBA itself to determine whether parties intended matters put to the arbitrator to be final. <u>See</u> <u>id.</u> at 519-20. It is plain the CBA and the 2015 MOA both do so. The CBA provides that the Arbitrator "has full authority to decide the issue or issues in dispute" and that the "opinion and award of the arbitrator . . . is final and binding upon all parties." Pet. ¶ 8; Pet. Ex. B at 29. Because it was the parties' intent for this Award to be final regarding the two questions that were decided, and because it is clear that the CBA allows the parties to submit any "issue or issues in dispute" to the Arbitrator to decide, the Award is sufficiently final to support this Court's jurisdiction.[13]

**B.**

The Proposed Intervenors and Non-Party Yan argue that preclusion doctrines bar this Court from confirming the Award. The Proposed Intervenors and Non-Party Yan point to prior litigation where various courts did not require former union

---

[13] This Court has jurisdiction under Section 301 of the LMRA, 29 U.S.C. § 185, to consider the petition to confirm the Award. However, in determining whether to entertain a petition to confirm a labor arbitration award under Section 301, courts look for guidance to cases under the Federal Arbitration Act, 9 U.S.C. § 1 <u>et</u> <u>seq.</u>, under which a district court only has the power to confirm or vacate a final arbitration award. <u>See Michaels v. Mariforum Shipping, S. A.</u>, 624 F.2d 411, 414 (2d Cir. 1980); <u>Mason Tenders</u>, 46 F. Supp. 3d at 435 n.6.

members to arbitrate their claims against their former employers. Contrary to the Proposed Intervenors' assertions, preclusion doctrines are affirmative defenses and not jurisdictional bars. See McKithen v. Brown, 481 F.3d 89, 104 (2d Cir. 2007).  In any event, their arguments are without merit.

Federal courts "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). Under New York law, collateral estoppel, also known as issue preclusion, will preclude a federal court from deciding an issue if "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." Vargas v. City of New York, 377 F.3d 200, 205-06 (2d Cir. 2004).  The Second Circuit Court of Appeals has "cautioned that '[i]ssue preclusion will apply only if it is quite clear that these requirements have been satisfied, lest a party be 'precluded from obtaining at least one full hearing on his or her claim.'" McKithen, 481 F.3d at 105.

Although under New York law, claim preclusion, or res judicata, is broader than collateral estoppel, encompassing issues that could have been raised, even if not actually

litigated, claim preclusion only applies to parties and their privies. See Paramount Pictures Corp. v. Allianz Risk Transfer AG, 96 N.E.3d 737, 743 (N.Y. 2018). "For purposes of claim preclusion, the requisite privity must be found in the substantial identity of the incentives of the earlier party with those of the party against whom res judicata is asserted." Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343, 346 (2d Cir. 1995); see also Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 96 (2d Cir. 2005) (findings regarding whether parties shared an "identity of interest" and whether one party had "sufficient control" over the other were necessary for determining whether privity existed).

Here, the Union was not a party to the prior litigations and the Proposed Intervenors have failed to demonstrate that the Union was in privity with the Respondents. The Proposed Intervenors' assertion that the Union's interests are identical to those of Respondents is unpersuasive. Nor is there evidence to suggest either the Union or Respondents have control over the other. The Union is pursuing grievance claims against the Respondents, seeking compensation for its members and former members for alleged violations of federal and state law. That both the Union and Respondents agree arbitration is the best mechanism for efficiently and effectively adjudicating these claims may show cooperation, but it does not rise to the level

of interest alignment necessary to demonstrate privity. Indeed, it is not surprising that the Proposed Intervenors have offered no cases in which a union and employer were found to be in privity. Because the Union was neither a party, nor in privity with any party to the prior lawsuits, the Proposed Intervenors' claim and issue preclusion arguments are without merit.[14]

**C.**

Non-Party Gail Yan argues that this Court lacks jurisdiction under the Rooker-Feldman doctrine. See D.C. Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fide. Tr. Co., 263 U.S. 413, 416 (1923). The Rooker-Feldman doctrine is a "narrow doctrine," that bars the jurisdiction of federal district courts over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Lance v. Dennis, 546 U.S. 459, 464 (2006). This argument is entirely without merit. The Union was not a party in any of the state court suits that the Proposed Intervenors have presented to this Court that the Proposed Intervenors argue barred the arbitration of claims of former union members against their employers. See

---

[14]  The parties dispute what, if any, final judgments haven been issued against any of the individual respondents. See ECF No. 142, at 1; ECF No. 143 ¶ 3. For example, Alliance for Health and First Chinese Presbyterian Community Affairs Home Attendant Corporation has asserted that "[n]o final judgment has been issued in either of the underlying [state court] litigations against Alliance of FCP." ECF No. 142, at 1.

Third Blackstone Decl., ECF No. 150, ¶ 7. Counsel for Non-Party
Yan nevertheless argues that the Union is in privity with the
Respondents, and thus Rooker-Feldman should apply.  For the
reasons already discussed, the Union cannot reasonably be
considered to be in privity with the Respondents.  In any event,
clear Supreme Court and Second Circuit precedent instruct that
principles of privity are inapplicable to Rooker-Feldman. See
Lance, 546 U.S. at 466; Kosachuk v. Selective Advisors Grp.,
LLC, 827 F. App'x 58, 61 (2d Cir. 2020)("In Lance v. Dennis, the
Supreme Court stated emphatically that Rooker-Feldman should not
be stretched to cover those in privity with state-court losers
because to do so would alchemize the doctrine into preclusion by
another name."); UBS AG, Stamford Branch v. HealthSouth Corp.,
645 F. Supp. 2d 135, 147 & n. 17 (S.D.N.Y. 2008). The Rooker-
Feldman doctrine does not deprive this Court of jurisdiction.

### IV.   Motion to Confirm Arbitration Award

The Petitioner has sought to confirm the Award, and the
Respondents have not opposed its confirmation.

The LMRA "establishes a federal policy of promoting
industrial stabilization through collective bargaining
agreements, with a particular emphasis on private arbitration of
grievances," and a "clear preference for the private resolution
of labor disputes." Nat'l Football League Mgmt. Council v. Nat'l
Football League Players Ass'n, 820 F.3d 527, 536 (2d Cir. 2016).

"Under [the LMRA's] framework of self-government, the collective bargaining agreement is not just a contract, but 'a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate,'" that "are negotiated and refined over time by the parties themselves so as to best reflect their priorities, expectations, and experience." Id.

Accordingly, a federal court's review of an LMRA arbitration award is "narrowly circumscribed and highly deferential." A&A Maint. Enter., Inc. v. Ramnarain, 982 F.3d 864, 868 (2d Cir. 2020). "As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Int'l Bhd. of Elec. Workers, Local 97 v. Niagara Mohawk Power Corp., 143 F.3d 704, 713 (2d Cir. 1998) (quoting United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 38 (1987)). Instead, a court's role is "simply to determine whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." New York City & Vicinity Dist. Council of United Bhd. of Carpenters & Joiners of Am. v. Ass'n of Wall-Ceiling & Carpentry Indus. of New York, Inc., 826 F.3d 611, 618 (2d Cir. 2016). "Because it is the arbitrator's view of the facts and the meaning of the contract for which the parties

bargained, . . . [i]t is the arbitrator's construction of the contract and assessment of the facts that are dispositive, 'however good, bad, or ugly.'" Nat'l Football League Mgmt. Council, 820 F.3d at 536 (quoting Oxford Health Plans LLC v. Sutter, 569 U.S. 564, 573 (2013)). The Supreme Court has explained that district courts "are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract," or "improvident, even silly" mistakes. Misco, 484 U.S. at 36, 39; see also Nat'l Football League Mgmt. Council, 820 F.3d at 536. Accordingly, an arbitration award is to be confirmed if there is even a "barely colorable justification" for the decision. United States Steel & Carnegie Pension Fund v. Dickinson, 753 F.2d 250, 252 (2d Cir. 1985).

In this case, the CBA required that grievances be arbitrated. Pet. Ex. B, at 29 (Art. XXVI, ¶ 2). The subsequent 2015 MOA clarified that grievances relating to "Covered Statutes" must be arbitrated. See Pet. Ex. D, at 9. Thus, under both agreements there is plainly an agreement to arbitrate. Second, under the CBA, arbitrations occur pursuant to AAA Rules, including AAA Rule 3(a), which delegates questions of jurisdiction and "arbitrability" to the Arbitrator. Therefore, the Respondents and the Union (on behalf of its employees)

agreed to arbitrate and to delegate questions of arbitrability and jurisdiction to the Arbitrator.

The Proposed Intervenors argue at length that the Arbitrator exceeded his authority because certain Proposed Intervenors were no longer employees at the time the 2015 MOA took effect, and therefore they never consented to arbitrate their claims under the Covered Statutes. In addition, the Proposed Intervenors argue that the 2015 MOA cannot relate back to claims based on violations of the Covered Statutes that occurred prior to the 2015 MOA.

However, the Proposed Intervenors' arguments confuse the question of consent to arbitration (namely, did parties consent to arbitrate) with the question of arbitrability (namely, whether the dispute at issue is within the scope of the arbitration agreement). The searching review that the Proposed Intervenor encourages this Court to undertake is not appropriate, because the parties to the CBA–namely the Union and the Respondents–plainly agreed to arbitrate grievances and to delegate such questions of arbitrability to the Arbitrator.

In the context of the FAA, the Supreme Court has instructed that "[j]ust as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." Henry Schein, Inc. v. Archer & White Sales,

Inc., 139 S. Ct. 524, 530 (2019). Specifically, "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue," even if the Court believes that "the argument that the arbitration agreement applies to the particular dispute is wholly groundless." Id. at 529-30. Similarly, the Court of Appeals for the Second Circuit consistently has instructed that courts must first decide the question of whether a court or an arbitrator answers questions of arbitrability, before proceeding to the question of whether the dispute is arbitrable. See VRG Linhas Aereas S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P., 717 F.3d 322, 325-26 (2d Cir. 2013); Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran, 445 F.3d 121, 122 (2d Cir. 2006). Although "[t]echnically the arbitrations in the labor context are governed by the [LMRA] rather than the FAA," courts in this Circuit have "substantially imported the analysis from the FAA" regarding whether an arbitrator exceeded his authority. A&A Maint. Enter., Inc., 982 F.3d at 869 n.2. The Proposed Intervenors have made little effort to distinguish these clear instructions from the FAA context. Respecting the parties' decision to delegate questions of arbitrability to an arbitrator in the CBA comports with the well-established, highly

deferential review of arbitration awards and the need to preserve industrial peace in the LMRA context.

The CBA plainly was an agreement to arbitrate, to which all of the Proposed Intervenors were bound. The CBA delegated questions of arbitrability to the Arbitrator by reference to the AAA Rules. Although "[t]he question [of] whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability," is presumptively "an issue for judicial determination," the matter may be committed to the arbitrator if "the parties clearly and unmistakably [so] provide." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002).[15] Courts in this Circuit have recognized that when "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability," such as the AAA Rules, "the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." Contec Corp. v. Remote Sol., Co., 398 F.3d 205, 208 (2d Cir. 2005); see also Henry Schein Inc., 139 S. Ct. at 529 ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract."); Citi Connect, LLC v. Local Union No. 3, Int'l Bhd. of Elec. Workers,

---

[15] New York law follows the same, "well settled proposition that the question of arbitrability is an issue generally for judicial determination," but also recognizes an "important legal and practical exception" when parties evince a "clear and unmistakable agreement to arbitrate arbitrability." Smith Barney Shearson Inc. v. Sacharow, 689 N.E.2d 884, 887 (N.Y. 1997); see also Shaw Grp. Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 121 (2d Cir. 2003).

<u>AFL-CIO</u>, No. 20-cv-5147, 2020 WL 5940143, at *5 (S.D.N.Y. Oct. 7, 2020).[16]

Moreover, the Arbitrator's conclusions are more than his own brand of "industrial justice." <u>Misco</u>, 484 U.S. at 38. First, given the absence of temporal limitations in the CBA or the 2015 MOA, with the appropriate highly deferential review, this Court cannot say that the Arbitrator's finding that claims based on violations of the Covered Statutes that occurred prior to the 2015 MOA's effective date were arbitrable either failed to draw its essence from the CBA or was outside the scope of his authority. <u>See, e.g.</u>, <u>Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.</u>, 198 F.3d 88, 98-99 (2d Cir. 1999); <u>Rodriguez v. New York Found. for Senior Citizens Home Attendant Servs., Inc.</u>, No. 15-cv-9817, 2016 WL 11707094, at *3 (S.D.N.Y. July 14, 2016); <u>Lai Chan v. Chinese-Am. Planning Council Home Attendant Program, Inc.</u>, 180 F. Supp. 3d 236, 241 (S.D.N.Y. 2016).

The Proposed Intervenors argue that the Union cannot represent its former employees, either in assenting to the 2015 MOA or in initiating the grievance, and thus—at least—former employees did not "consent" to arbitration. But this misconceives the relationship between a Union and its bargaining

---

[16] New York Law similarly recognizes a court's limited authority in the face of such a clear delegation of questions concerning arbitrability to an arbitrator. <u>See, e.g.</u>, <u>Revis v. Schwartz</u>, No. 2017-07940, 2020 WL 7756565, at *8 (N.Y. App. Div. Dec. 30, 2020).

unit members and oversimplifies the CBA at issue. As the "exclusive bargaining" agent for home care employees of the Respondents, the Union had authority to enter into CBAs and subsequent agreements, on behalf of its bargaining unit members. See 29 U.S.C. § 159(a). The Proposed Intervenors' arguments that former employees cannot be bound by a CBA or cannot be represented by their Union in arbitration are without merit. To accept that conclusory argument would "essentially allow Union members to opt-out of their obligations under a collective bargaining agreement by simply withdrawing from their union prior to bringing suit." Germosen v. ABM Indus. Corp., No. 13-cv-1978, 2014 WL 4211347, at *6 & n.16 (S.D.N.Y. Aug. 26, 2014). Indeed, courts in this Circuit have compelled former employees to arbitrate claims under CBA alternative dispute provisions, including in instances where supplemental agreements were executed after the plaintiff ceased employment. See e.g., Rodriguez, 2016 WL 11707094, at *3 (finding a former employee who ceased working prior to the date the 2015 MOA took effect was still compelled to arbitrate her wage-hour claims, including statutory claims); Pontier v. U.H.O. Mgmt. Corp., No. 10-cv-8828, 2011 WL 1346801, at *3 (S.D.N.Y. Apr. 1, 2011) (the fact that plaintiff was discharged before the union executed a supplemental agreement requiring arbitration of Title VII claims "d[id] not relieve Plaintiff of his obligation to abide by the

mediation and arbitration provisions" contained therein);
Duraku v. Tishman Speyer Properties, Inc., 714 F. Supp. 2d 470,
474 (S.D.N.Y. 2010) (compelling arbitration of an employees'
Title VII and state law discrimination claims, based on a
supplemental agreement's alternative dispute resolution
provision negotiated after the claims were filed).

The Proposed Intervenors' reliance on the Court of Appeals'
summary affirmance in Agarunova v. Stell Orton Home Care Agency,
Inc., is misplaced. 794 F. App'x 138 (2d Cir. 2020). In
Agarunova, the Court of Appeals affirmed the district court's
determination that a former employee could not be compelled to
arbitrate by the 2015 MOA because she was no longer an employee
or 1199SEIU member when the 2015 MOA took effect. See id. at
140. However, the panel declined to address the employer's
argument that this was a "question of arbitrability" that was
delegated to the arbitrator under the CBA, because that issue
was not properly raised in the district court. Id. Because the
question of whether the Arbitrator's jurisdiction extended to
former employees' statutory claims is a question of
arbitrability, and the CBA delegated such questions to the
Arbitrator, Agarunova does not support the Proposed Intervenors'
argument.[17]

---

[17] The Proposed Intervenors also rely on Chu v. Chinese-American Planning
Council Home Attendant Program, Inc., 194 F. Supp. 3d. 221, 229 (S.D.N.Y.
2016), in which Judge Forrest suggested that former employees could not be

Because the CBA and 2015 MOA evince a clear consent to arbitrate and delegate questions of arbitrability to the Arbitrator, and because the Arbitrator's Award is sufficient to survive the highly deferential review appropriate for confirmation of LMRA arbitration awards, the Award is confirmed.

## CONCLUSION

The Court has considered all of the arguments of the parties, Proposed Intervenors, and Non-Party Yan. To the extent not discussed above, the arguments are either moot or without merit.  For the foregoing reasons, the Proposed Intervenors' motion to intervene is **DENIED,** the motions to dismiss by the Proposed Intervenors and Non-Party Yan are **DENIED,** and the petition to confirm the Award is **GRANTED.** The Clerk is directed to enter judgment accordingly. The Clerk is also directed to close all pending motions and to close this case.

**SO ORDERED.**

**Dated:     New York, New York**
**           February 18, 2021**

**/s/ John G. Koeltl**
**John G. Koeltl**
**United States District Judge**

---

bound by the 2015 MOA.  First, Judge Forrest did not consider whether the question was one of arbitrability, or whether the CBA delegated such a question to the arbitrator.  Moreover, as Judge Sullivan recognized in <u>Raymond v. Mid-Bronx Haulage Corp</u>, the passage that Proposed Intervenors cite clearly was dicta, and Judge Sullivan presented compelling reasons not to extend it further. <u>See</u> No. 15-cv-5803, 2017 WL 9882601, at *6 (S.D.N.Y. June 10, 2017). Moreover, Judge Caproni dealt with the merits of a similar claim much more directly in <u>Rodriguez</u>, 2016 WL 11707094, at *3 (finding that former employee was required to arbitrate under CBA and 2015 MOA, even though she ceased employment before 2015 MOA took effect).